# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JAMES D. HARPER, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Civil Action No. CV-08-S-2410-NE |
| ) | |
| **AMERICAN AIRLINES, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This action is before the court on defendant's motion to transfer venue to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).[1] Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes that the motion is due to be granted.

## I. STATEMENT OF FACTS

This action arises out of the confinement of plaintiff and other passengers on commercial aircraft diverted from the Dallas-Fort Worth, Texas airport ("DFW") on December 29, 2006, due to inclement weather, and grounded at various airports in Arkansas, Oklahoma, Missouri, Tennessee, Texas, and Louisiana.[2] Plaintiff was a

---

[1] *See* doc. no. 9.

[2] *See* doc. no. 1 (Complaint) ¶¶ 22, 35. Specifically, defendant diverted its aircrafts to airports in the following cities: Lubbock, Texas; Midland, Texas; Abilene, Texas; Wichita Falls, Texas; San Antonio, Texas; Austin, Texas; Houston, Texas; Longview, Texas; Oklahoma City, Oklahoma; Tulsa, Oklahoma; Little Rock, Arkansas; Shreveport, Louisiana; New Orleans,

passenger aboard defendant's Flight 1654, bound from Cancun, Mexico to DFW, en route to his final destination of Huntsville, Alabama.[3] Plaintiff's flight was diverted to New Orleans, Louisiana. He alleges that he and other passengers were wrongfully confined by defendant on the airplane for approximately seven hours.[4]

Plaintiff is a resident of Huntsville, Alabama. He commenced this action, not just on his own behalf, but also on behalf of a putative class. He alleges that "[a]s many as 12,000 passengers[,] involving as many as 124 flights on December 29, 2006[,] were confined to aircraft diverted from Dallas by Defendant to seventeen other airports and confined for three to twelve hours on the aircraft in poor to deplorable conditions."[5]

Plaintiff's claims are bottomed upon the so-called "Montreal Convention": an accord that "succeeded the Warsaw Convention . . . as the treaty exclusively governing the rights and liabilities of passengers and carriers in international air transportation." *Bassam v. American Airlines*, 287 Fed. Appx. 309, 312 (5th Cir. 2008). *See also Convention for the Unification of Certain Rules for International Carriage by Air*, S. Treaty Doc. No. 106-45, 1999 WL 33292734 (May 28, 1999)

---

Louisiana; Memphis, Tennessee; Nashville, Tennessee; St. Louis, Missouri; and Springfield, Missouri. *See* doc. no. 10, Ex. 1 (Declaration of Alec Bramlett), ¶ 2H.

[3] *See* doc. no. 1, ¶ 6.
[4] *Id.*, ¶ 11.
[5] *Id.*, ¶ 19.

(entered into force Nov. 4, 2003). "The Montreal Convention . . . was the product of a United Nations effort to reform the Warsaw Convention 'so as to harmonize the hodgepodge of supplementary amendments and intercarrier agreements of which the Warsaw Convention system of liability consists.'" *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 780 (7th Cir. 2008) (quoting *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004)).

Plaintiff alleges that defendant violated the Montreal Convention in the following respects: delaying passengers without compensation for expenses and losses; preventing passengers from deplaning grounded aircrafts; failing to supply and service grounded aircrafts; serving water "known by [defendant] to be unfit for drinking and [water that] was probably contaminated with bacteria from sanitary waste that could sicken and endanger passengers' health if drunk"; holding diverted flights to maximize revenue; and deciding "to close its headquarters at Fort Worth where its [*sic*] most of its Customer Service personnel work for the holiday weekend on December 29, 2006 through January 1, 2007."[6] Plaintiff seeks individual damages in the amount of $8,000, and an additional amount "in excess of $5,000,000" as compensation for members of the putative class for the "delays, injuries,

---

[6] *Id.*, ¶¶ 40-46.

confinements, and indignities suffered as a result of Defendant's conduct."[7]

Defendant's motion asks this court to transfer the action to the Northern District of Texas, which encompasses the Dallas-Fort Worth, Texas metropolitan area. *See* 28 U.S.C. § 124(a) (stating that the Northern District of Texas comprises seven divisions, including the "Dallas Division" and the "Fort Worth Division").

## II.  DISCUSSION

Defendant's motion is controlled by 28 U.S.C. § 1404(a), which provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The goal of that statute is not to shift inconvenience from a defendant to a plaintiff, nor is it to allow adjudication in a forum that is "likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964). Instead, the statute is intended to promote litigation in the forum "in which judicial resources could most efficiently be utilized and the place in which the trial would be most easy, expeditious and inexpensive." *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981) (internal quotation marks and citations omitted).[8]

Further, § 1404(a) is a proper basis for a motion to transfer a case to another

---

[7] *Id.*, ¶¶ 54, 55.

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

district only when the plaintiff's chosen forum is an "appropriate" venue, regardless of convenience. *See Holmes v. Freightliner, LLC*, 237 F. Supp. 2d 690, 692 (M.D. Ala. 2002).[9]  As noted in Part I above, plaintiff's final destination was Huntsville, Alabama.  Accordingly, venue in the Northern District is appropriate under Article 33 of the Montreal Convention, which provides that

> an action for damages under the Convention must be brought, at the plaintiff's option, in the territory of one of the States Party to the Convention before a court of the carrier's domicile or the carrier's principal place of business, the place where the contract was made, *or the place of destination of the passenger*.

*Convention for the Unification of Certain Rules for International Carriage by Air*, S. Treaty Doc. No. 106-45, art. 33, 1999 WL 33292734, at *23 (emphasis supplied).[10]

In addition, § 1404(a) expressly limits the range of potential transferee forums to those districts in which the action "might have been brought."  28 U.S.C. § 1404(a).  This requirement is also met pursuant to Article 33 of the Montreal

---

[9] If the Northern District of Alabama were not an appropriate venue for claims based upon the Montreal Convention, the relevant statutory basis for a motion to change venue would be § 1406, which provides that: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

[10] *Compare* 28 U.S.C. § 1391(b) ("A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.").

Convention, because defendant's headquarters ("the carrier's domicile or . . . principal place of business") is within the Northern District of Texas.[11]

Finally, when considering a motion to transfer venue pursuant to §1404(a), the burden is on the moving party to establish the propriety of the transfer. *See In re Ricoh Corp.*, 870 F.2d 570, 572 (11th Cir. 1989). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

Having determined that a motion pursuant to § 1404(a) is the correct procedural vehicle for obtaining transfer, and that the proposed transferee court is

---

[11] *Compare* doc. no. 10, Ex. 1 (Declaration of Alec Bramlett), ¶ 3 ("[Defendant's] headquarters are located near DFW Airport in Fort Worth, Texas, and the documents and records related to the events of December 29, 2006, are and will be retained primarily at [defendant's] headquarters.") *with* 28 U.S.C. § 124, the relevant portions of which read as follows:

> Texas is divided into four judicial districts to be known as the Northern, Southern, Eastern, and Western Districts of Texas.
>
> Northern District
>
> (a) The Northern District comprises seven divisions.
>
> (1) The Dallas Division comprises the counties of Dallas, Ellis, Hunt, Johnson, Kaufman, Navarro, and Rockwall.
>
> Court for the Dallas Division shall be held at Dallas.
>
> (2) The Fort Worth Division comprises the counties of Comanche, Erath, Hood, Jack, Palo Pinto, Parker, Tarrant, and Wise.
>
> Court for the Fort Worth Division shall be held at Fort Worth.

28 U.S.C. § 124(a)(1), (2) (2008).

capable of hearing the case, there remains the decision of whether transfer is warranted. All motions pursuant to § 1404(a) require "an individualized case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "The three factors mentioned in the statute, convenience of the parties and witnesses and the interest of justice, are broad generalities that take on a variety of meanings in specific cases." 15 Wright, Miller & Cooper, *Federal Practice & Procedure* § 3847 (2d ed. 1986). Within each of the statutory factors lies a more specific inventory.

    **a.**    **Convenience of the parties**

Among the many considerations to be weighed in evaluating the convenience of the forum for the parties are:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action, and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Koehring Co. v. Hyde Constr. Co.*, 324 F.2d 295, 296 (5th Cir. 1963) (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947)). *See also Holmes*, 237 F. Supp. 2d at 692; *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 504 (M.D. Ala. 1994).

In addition to these practical matters, the great majority of courts afford

considerable deference to the plaintiff's choice of forum, and thus require the defendant to establish that balance of factors weigh in its favor. *See Gulf Oil Corp.*, 330 U.S. at 508 (instructing that, under the doctrine of *forum non conveniens*, "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). However, the deference given to the plaintiff's choice of forum is substantially lessened when the plaintiff brings claims on behalf of a putative class. As the Supreme Court observed in *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518 (1947),

> where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.

*Koster* 330 U.S. at 524. *See also Barnett v. Alabama*, 171 F. Supp. 2d 1292, 1295 (S.D. Ala. 2001) ("Although a plaintiff's choice of forum generally should not be lightly disturbed, the weight accorded to [plaintiff's] choice of forum is considerably reduced by virtue of the fact that he brought his challenge as a class action.") (bracketed alteration added); *Gould v. National Life Insurance Co.*, 990 F. Supp. 1354, 1358 (M.D. Ala. 1998) ("Plaintiff's choice of forum is entitled to less deference when the action is one brought on behalf of a class of persons similarly situated, as it is here."); *see generally*, *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) (holding

that, when enacting § 1404(a), "Congress . . . intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader").

The deference courts afford to the plaintiff's choice of forum is also diminished when the events that form the basis of the claims have no demonstrable connection to that forum. Within the Eleventh Circuit, it is well-established that when "'the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration.'" *A.J. Taft Coal Company v. Barnhart*, 291 F. Supp. 2d 1290, 1310 (N.D. Ala. 2003) (quoting *Gould*, 990 F. Supp. at 1358) (in turn quoting *Garay v. BRK Electronics*, 755 F. Supp. 1010, 1011 (M.D. Fla. 1991)). *See also Johnston*, 158 F.R.D. at 505 (noting that, "[w]here none of the conduct complained of took place in the forum selected by Plaintiff, the Plaintiff's choice of forum is of minimal value in determining whether to transfer an action").

Here, defendant argues — and the court agrees — that plaintiff's choice of forum carries little weight in consideration of whether to transfer this action. Defendant points out that plaintiff has brought this action not only on his own behalf, but on behalf of thousands of allegedly similarly-situated individuals who have an

equal right to bring actions in other jurisdictions.[12] Additionally, defendant notes that all of the allegations of plaintiff's complaint arise from events that occurred at DFW and seventeen airports *outside* the State of Alabama. Defendant also produced a declaration of its Senior Attorney, Alec Bramlett, stating that decisions regarding personnel, equipment, and planning for weather disruptions that form the basis of this action were made by defendant's officers and agents at its offices in Fort Worth.[13] Given plaintiff's claims on behalf of a putative class and the lack of connection between his claims and this forum, defendant's burden in showing that a transfer is warranted is significantly reduced.

Regardless of the extent of deference afforded to his choice of forum, plaintiff argues that transfer of this action to the Northern District of Texas would serve only to shift inconvenience from defendant to him. Plaintiff specifically argues against transfer by asserting that "it is obviously and ridiculously far easier and less expensive for [defendant] to fly its people" to this district than for "plaintiff and his people to be forced to constantly travel" to the Northern District of Texas. Doc. no. 14 at 6. The court finds plaintiff's argument unavailing because, on balance, the considerations of convenience to the parties favor transfer.

---

[12] *See* doc. no. 10, Ex. 2 (Declaration of Sean Bentel), ¶ 3 (stating that on plaintiff's flight from Cancun to the DFW airport, Flight 1654, passengers resided in 19 states other than Alabama, in addition to Canada and France).

[13] *See id.*, Ex. 1 (Declaration of Alec Bramlett), ¶¶ 2B, 2E, and 2G.

First, the court notes that plaintiff's counsel are all based outside of this district and would have to travel several hundred miles to attend court proceedings regardless of whether this action is transferred, whereas defendant's primary counsel would not have to travel to court proceedings if this action is transferred.[14]  Second, defendant has convinced the court that a transfer will increase the availability of non-party witnesses.  The likely non-party witnesses identified by counsel for defendant and plaintiff are individuals who worked at airports to which aircrafts were diverted, the Federal Aviation Administration's Air Traffic Control Center in Fort Worth, the National Weather Service's Forecast Office in Fort Worth, and the Weather Services, Inc., office in Fort Worth.[15]  Because none of the aircrafts were grounded within this district, none of the potential third-party witnesses were working within this district on December 29, 2006, whereas a substantial number were working within the Northern District of Texas.[16]  This is an important consideration because all of the non-party witnesses who reside within the Northern District of Texas will be outside the reach of *this court's* subponea power, but within the subponea power of the

---

[14] Plaintiff's counsel are based in Mobile, Alabama, Sarasota, Florida, and Fayetteville, Arkansas.  *See* doc. no. 14 at 15.

[15] *See* doc. no. 10, Ex. 1 (Declaration of Alec Bramlett) and doc. no. 14, Ex. 1 (Declaration of Paul S. Hudson).

[16] *See* doc. no. 10, Ex. 1, ¶ 4 (stating that defendant diverted at least one aircraft to an airport in Abilene, Texas, which is within the Northern District of Texas, *see* 28 U.S.C. § 124(a)(3)).

Northern District of Texas. *See* Fed. R. Civ. P. 45. Lastly, the fact that documents and records related to the events of December 29, 2006, are retained primarily at defendant's headquarters in Fort Worth favors transfer.[17]

    **b.**   **Convenience of the witnesses**

It is often said that "the most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses." *Hutchens v. Bill Heard Chevrolet Co.*, 928 F. Supp. 1089, 1091 (M.D. Ala. 1996). *See also Insuracorp, Inc. v. American Fid. Assur. Co.*, 914 F. Supp. 504, 506 (M.D. Ala. 1996). This court agrees and finds that the convenience of the witnesses weighs in favor of transfer. The principal witnesses in this action reside predominantly in Texas, particularly within the Northern District of Texas, with very few residing in Alabama. Among those expected to be key witnesses are defendant's managerial employees working at DFW on December 29, 2006, including: Robert Glaser, Managing Director of Operations; Jeff Plant, Managing Director of Passenger Services; and Mike McKanna, Manager of Operations.[18] Defendant asserts that these individuals will testify about DFW closing its landing ramps on December 29, 2006, and defendant's efforts to land flights at DFW that day.[19] Additionally, managers at defendant's

---

[17] *See* doc. no. 10, Ex. 1 (Declaration of Alec Bramlett), ¶ 3.
[18] *Id.*, Ex, 1, ¶ 2B.
[19] *Id.*

"Systems Operations Control Center" near DFW, including Danny Burgin, Jeff Frost, and Jim Eastin, are also expected to testify about the actions they took to divert incoming flights to other airports, and the information they received from DFW, weather services, and the Federal Aviation Administration's Air Traffic Control Center in Fort Worth.[20] Defendant also asserts that its employees working at its headquarters in Fort Worth — Bob Cordes, Vice President of Operations and Planing and Performance, Sean Bentel, Managing Director of Customer Relations, and James Gaydos in Airport Services — are likely to testify about its corporate policies and practices, and the number and length of flight delays and diversions.[21]

The parties also expect passengers on flights that were grounded to testify, but defendant's records indicate that only five of the 147 revenue passengers on plaintiff's flight to DFW had Alabama addresses, and that the none of the members of the crew on that flight reside in Alabama.[22] Moreover, defendant's Director of Customer Relations, Sean Bentel, produced a declaration stating that defendant sent letters to several thousand passengers who were delayed in connection with the events of December 29, 2006, and for whom it could obtain a mailing address, and that 1,507 letters were sent to addresses in Texas, but only 72 letters were mailed to

---

[20] *Id.*, Ex. 1, ¶ 2E.

[21] *Id.*, Ex. 1, ¶ 2G.

[22] *Id.*, Ex. 1, ¶ 2F and Ex. 2 (Declaration of Sean Bentel), ¶ 3.

addresses in Alabama.[23] Lastly, the court notes that eight of the seventeen airports to which defendant diverted flights are located in Texas.

### c. Interest of justice

The final statutory requirement, that the transfer be "in the interest of justice," calls for an objective evaluation of a diverse set of factors. The preeminent considerations include the importance of "having localized controversies decided at home," the desire to avoid imposing jury duty "upon the people of a community which has no relation to the litigation," and the administrative convenience of "having the trial of a diversity case in a forum that is at home with the state law that must govern." *Gulf Oil*, 330 U.S. at 509; *see also Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns*, 689 F.2d 982, 991 (11th Cir. 1982); *Koehring*, 324 F.2d at 296.

Defendant maintains that the interests of justice support a transfer, claiming that the citizens of Texas have a greater interest in this dispute than the citizens of Alabama, because the operations that form the basis of this action occurred in Fort Worth. Defendant further argues that the State of Texas has an interest in monitoring its corporations to ensure that they establish policies and procedures that protect its citizenry. Drawing on the local interest factor, plaintiff urges the court to deny

---

[23] *See* doc. no. 10, Ex. 2, ¶ 4.

transfer on the ground that the people of Alabama also have an interest in protecting its citizens from a foreign corporation's misconduct. However, in view of the insignificance of Alabama's connection with this controversy, the court finds that a transfer of venue would serve not only the interest of convenience, but also the interests of justice.

### III. CONCLUSION

For the foregoing reasons, defendant's motion to transfer venue to the United States District Court for the Northern District of Texas is due to be granted. An appropriate order will be entered contemporaneously herewith.

DONE this 18th day of May, 2009.

_____
United States District Judge